## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| _____ ) | |
| SI FA LEE, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| ) | Civil Action No. 21-CV-40092-AK |
| v. ) | |
| ) | |
| NELSON ALVES, ) | |
| SUPERINTENDENT AT MCI-NORFOLK ) | |
| ) | |
| Respondent. ) | |
| _____) | |

## MEMORANDUM AND ORDER ON LEE'S PETITION FOR WRIT OF HABEAS CORPUS

**ANGEL KELLEY, D.J**.

On August 31, 2021, Petitioner Si Fa Lee ("Lee") filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his 2016 conviction in Essex Superior Court for first degree murder.  [Dkt. 1].  Lee subsequently filed an Amended Petition, [Dkt. 13], which Superintendent Nelson Alves ("Respondent") opposed. [Dkt. 36].  For the reasons set forth below, Petitioner's Amended Petition for a Writ of Habeas Corpus is **DENIED**.

## I.    BACKGROUND

Lee's Amended Petition, filed on October 14, 2021 asserts two claims for relief: (1) he was not provided with competent translators at trial, and (2) he was denied effective assistance of counsel.

### A.    Factual Background

As Lee's claims do not dispute the underlying facts of the case, a brief overview drawn from the Supreme Judicial Court's summary of the facts will suffice.

> In the early morning hours of September 27, 2011, three robbers broke into a restaurant by climbing through a rooftop ventilation shaft.  Once inside, the robbers encountered the sixty-two year old victim, restaurant owner Shui Woo, who had slept in his office that night.  One robber, later identified as [Lee], struck the victim, bound his feet and hands, and ordered him to open a safe. When the victim failed to do so, the robbers beat him to death with a crowbar and a hammer.

Commonwealth v. Lee, 483 Mass. 531, 532 (2019).

### B.     State Court Proceedings

In May 2016, following a twenty-nine-day trial, a jury convicted Lee of murder in the first degree on theories of extreme atrocity or cruelty and felony-murder, stealing by confining or putting in fear, and armed assault with intent to murder a person sixty years or older.

Lee appealed, but before his direct appeal had been briefed, he moved for a new trial on multiple grounds.  In his motion for a new trial, Lee raised eight issues, including that the trial judge did not appoint a competent interpreter and that trial counsel was ineffective.  The Motion Judge denied the motion, and Lee appealed to the Massachusetts Supreme Judicial Court ("SJC").

On appeal, Lee asserted many claims, including that he was not provided with a competent translator and that he was denied effective assistance of counsel.  Additionally, Lee asked the SJC to exercise its authority pursuant to Mass. Gen. Laws ch. 278 § 33E and order a new trial or direct entry of a lesser degree of guilt.  On February 16, 2021, the SJC denied Lee's appeal.

### C.     Federal Habeas Proceedings

On August 31, 2021, Lee filed a Petition for federal habeas relief.  [Dkt. 1].  Lee filed an Amended Petition two months later.  [Dkt. 13].  The Respondent filed a Motion to Dismiss based

on failure to exhaust state court remedies [Dkt. 18], which this Court denied on September 19, 2022.  [Dkt. 23].  Lee's Amended Petition is now before the Court.

## II.    LEGAL STANDARD

The standard of review of habeas corpus petitions is set forth in 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  Harrington v. Richter, 562 U.S. 86, 97 (2011).  Under this standard, a federal court may not grant a writ of habeas corpus unless the underlying state court adjudication resulted in a decision that either "(1) 'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,' or (2) 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'"  Brown v. Ruane, 630 F.3d 62, 66 (1st Cir. 2011) (quoting 28 U.S.C. § 2254(d)(1)-(2)).

Under subsection (d)(1), "a state court['s] decision is 'contrary to' clearly established federal law . . . if it 'contradicts the governing law set forth in the Supreme Court's cases or confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from its precedent.'"  Id. at 67 (quoting John v. Russo, 561 F.3d 88, 96 (1st Cir. 2009)).  A state court's decision involves an unreasonable application of clearly established federal law "if the state court 'identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'"  Id. (quoting Williams v. Taylor, 529 U.S. 362, 413 (2000)) (alteration in original).

Relief under subsection (d)(2) requires "a showing that the state court decision 'was based on an unreasonable determination of the facts' on the record before that court."  Porter v.

Coyne-Fague, 35 F.4th 68, 75 (1st Cir. 2022) (quoting 28 U.S.C. § 2254(d)(2)).  "This

demanding showing cannot be made when '[r]easonable minds reviewing the record might

disagree' about the finding in question."  Id. (quoting Brumfield v. Cain, 576 U.S. 305, 314

(2015)).  "[A] state-court factual determination is not unreasonable merely because the federal

habeas court would have reached a different conclusion in the first instance."  Wood v. Allen,

558 U.S. 290, 301 (2010).

## III.   DISCUSSION

In his Amended Petition, Lee advances two claims for relief: (1) he did not have a fair

trial because he was not provided with competent translators, and (2) he was denied effective

assistance of counsel when trial counsel failed to obtain a competent translator in the four years

leading up to trial and did not ensure that Lee was provided with a competent translator to assist

counsel in his representation of Lee during trial.  The first claim must be assessed under

subsection 2254(d)(2).  The second claim is subject to subsection 2254(d)(1).

### A.   Claim One: Lee's Right to a Competent Translator

Lee asserts that the SJC unreasonably found that two of his translators, Way Moy and

Stephanie Liu, were competent translators and that the SJC ignored evidence that Lee was unable

to understand the trial or assist in his own defense.  Respondent contends that the SJC's factual

determinations were objectively reasonable under subsection 2254(d)(2); there was no clearly

established federal law governing the right to a translator under subsection 2254(d)(1); and even

if a violation did occur, it was harmless error.

1.      **The SJC's Findings**

Lee objected multiple times to his translators during trial, and the trial judge repeatedly

heard argument as to the adequacy of the translators.  At the conclusion of the trial, the trial

judge made detailed findings of fact to explain his rulings.

On appeal, the SJC summarized the trial judge's findings as follows, supplementing them

with "uncontroverted evidence from the record":

> [Lee], who was born in China, does not speak English.  At his January 2012
> arraignment in the Superior Court, he filed a motion requesting funds for an
> interpreter because "his native language is Cantonese[ ]."  In subsequent pretrial
> motions, [Lee] continued to represent that "his native language is Cantonese[ ]"
> and "his native language is the Cantonese dialect of Chinese."  As a result, the
> judge appointed Cantonese interpreters to interpret for [Lee] in twenty-three court
> appearances.  These pretrial matters included a complex motion to suppress
> raising issues of cell site location information.

> On January 13, 2016, the judge began to empanel a jury in the joint trial of the
> defendant and [co-defendant] Sun.  During seven days of jury selection, the judge
> provided [Lee] with Cantonese interpreters, and Sun with Mandarin interpreters.
> On January 20, 2016, [Lee] objected to the qualifications of one of the Cantonese
> interpreters.  He did not, however, indicate that he was unable to understand this
> interpreter's Cantonese.

> [Lee's] severed trial commenced on March 8, 2016, with two Cantonese
> interpreters, Lewanna Li (Li) and Melissa Lo (Lo). On the fourth day of
> empanelment, [Lee] asserted that "some of the interpretation" by Li was
> inaccurate.  Defense counsel informed the judge that [Lee] "does speak
> Cantonese, but that is not his native Chinese language.  His native Chinese
> language is [Taishanese].  The language spoken in the Province of [Taishan],
> China. . . . [A] [Taishanese] interpreter would be more suitable for [Lee]."  The
> judge continued to empanel with Lo as the sole interpreter, and scheduled a
> hearing for the following day.

> The next day, counsel stated that he had spoken to [Lee] regarding "the
> [e]mpanelment process, his understanding of the process and the potential for
> errors in translation."  After these discussions, trial counsel explained, [Lee] had
> "clearly and unequivocally conveyed to [trial counsel] that he understood the
> [e]mpanelment process."  Counsel added that [Lee] was "raising no issues with
> regard to that whatsoever."

The judge conducted a colloquy with [Lee] to confirm that he had knowingly and voluntarily withdrawn his objection to the interpretation of the proceedings. [Lee] said that he was born in China, and speaks Cantonese and Taishanese. When asked about the conduct of the interrupted trial, [Lee] stated that he had had "a little bit" of "difficulty" with the interpretation because some of the words spoken during jury voir dire were not, in his opinion, interpreted. With respect to this trial, [Lee] indicated that he understood that he had a right to "be present during a trial, to understand what is happening and to be able to assist meaningfully with . . . [his] defense." After the colloquy, the judge found that "[Lee had] been able to understand what [was] going on . . . and that [Lee had] knowingly, willingly and voluntarily answered the [c]ourt's questions and the [c]ourt [was] comfortable to make a finding that the defendant [was] able to fully participate in the proceedings."

On April 5, 2016, the judge found Cantonese interpreter Stephanie Liu ("Liu") to be qualified to interpret pursuant to G. L. c. 221, § 92, and Mass. R. Crim. P. 41, 378 Mass. 918 (1979). [Lee] informed the judge that "he [was] much more comfortable with [Taishanese] than he [was] in Cantonese," and would "prefer a [Taishanese] interpreter." Thereafter, [Lee] expressed his dissatisfaction with Liu. [Lee] contended that "he did not understand, because of poor interpretation, much of what was said during the opening statements of counsel and during the testimony of the witness [on the first day of trial]." The judge stated he did not credit [Lee] "for so many reasons," but would make specific findings of fact at a later point. [Lee] asserted that he required a Taishanese interpreter "to vindicate his constitutional rights."

On April 12, 2011, [Lee] renewed his request for a Taishanese interpreter because he had "only understood [ninety] percent of what was translated to him on the day before." The judge conducted a voir dire hearing to address [Lee's] contention that he did not understand the Cantonese interpreters. [Lee] waived the interpreter privilege, see Mass. G. Evid. § 522(b) (2019), and Liu and Lo testified that they were both able to speak to [Lee] in Cantonese and understood his Cantonese responses. Lo added that she also spoke Taishanese, which she had learned at a young age from her great-grandmother. She had not, however, interpreted words into Taishanese until the day of the voir dire hearing.

The judge found "that [Lee] speaks Cantonese fluently" and that [Lee's] claim he did not understand the proceedings was not credible "to an exponential degree." The judge nonetheless agreed to appoint [Lee] a Taishanese interpreter. The next day, the judge conducted a hearing and appointed Taishanese interpreter Way Moy ("Moy"), who recently had retired as a staff interpreter for the New York Supreme Court. [Lee] objected to Moy's lack of certification in Massachusetts. The following day, April 14, 2016, [Lee] expressed dissatisfaction with Moy's interpretation. Counsel said that [Lee] "speaks a variation of [Taishanese]" that "Moy does not speak." [Lee] characterized Moy's Taishanese as "broken" or "very old school[ ]," dating to the 1920s and 1930s. The judge found that Moy

was highly qualified in Taishanese and that [Lee] had received "the interpreter that he wanted."

Lee, 483 Mass. at 537–39.

The SJC noted that failure to provide an effective translator implicates multiple Constitutional rights, including the Fifth Amendment due process right to understand the proceedings[1] and the Sixth Amendment rights to confront adverse witnesses[2] and consult meaningfully with counsel during trial.[3] Id. at 540. The SJC also identified the Massachusetts statutory framework that ensures a defendant's right to a court-appointed, qualified interpreter. Id. (citing Mass. Gen. Laws ch. 221C, §§ 1-2; Mass. Gen. Laws ch. 221, § 92).

The SJC then reviewed the trial judge's factual findings for abuse of discretion. Id. at 541. First, the SJC affirmed that "[t]he judge's finding that the defendant spoke fluent Cantonese, and understood the proceedings interpreted from English into Cantonese, is well supported by the record." Id. at 542. In support thereof, the SJC referred to (1) Lee's representations over the four years prior to trial that "his native language is Cantonese," (2) a colloquy wherein Lee withdrew his objections to the Cantonese interpreters, and (3) the fact that, at one point, Lee specifically requested Cantonese interpreter Lo. Id.

Second, the SJC found that "[t]he judge's denial of the defendant's motion to remove Liu, and the judge's decision that Liu was competent, are also well supported by the record and indicate no abuse of discretion." Id. On appeal, Lee pointed to an exchange in the record

---

[1] See United States v. Lopez-Collazo, 824 F.3d 453, 460-61 (4th Cir. 2016), cert. denied, 580 U.S. 1058 (2017); see also United States ex rel. Negron v. New York, 434 F.2d 386, 388 (2d Cir. 1970).

[2] See art. 12 of the Massachusetts Declaration of Rights; Commonwealth v. Garcia, 379 Mass. 422, 437 (1980); see also United States v. Carrion, 488 F.2d 12, 14 (1st Cir. 1973), cert. denied, 416 U.S. 907 (1974) ("right to confront witnesses would be meaningless if the accused could not understand their testimony, and the effectiveness of cross-examination would be severely hampered").

[3] See United States ex rel. Negron, supra note 1, at 389.

wherein Liu misinterpreted Lee's testimony regarding the name of an unrelated restaurant.  The SJC reviewed the trial judge's <u>voir dire</u> on the issue, during which Liu explained that the name of the restaurant, Kowloon, was very similar to the Cantonese word "kowlong" meaning "dragon," which was part of the name of the victim's restaurant.  <u>Id.</u> at 543.  The SJC concluded there was "no basis to disturb the judge's factual finding that there was 'absolutely no issue as it relates to [Liu's] ability.'"  <u>Id.</u> at 543.

Third, the SJC found that the trial judge's findings that Moy was a competent Taishanese translator, "[t]he defendant has not demonstrated that the judge's findings are erroneous."  <u>Id.</u>  The SJC referred to the trial judge's reasoning that Lee was able to respond, with Moy translating, to 625 questions on direct examination and 300 questions on cross-examination.  <u>Id.</u>

## 2.     Collateral Review

Lee submits his Petition under the theory that the SJC's findings "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).[4]  It is a basic principle of habeas review that "[a] state court's factual findings are presumed to be correct unless the petitioner rebuts the presumption with clear and convincing evidence" and that "[t]his presumption applies to determinations made by both state trial and appellate courts."  <u>Gaskins v. Duval</u>, 640 F.3d 443, 452 (1st Cir. 2011).  Thus, "in order to be entitled to relief [under AEDPA], the petitioner must meet his burden of demonstrating that the [SJC's] decision reflects an unreasonable application of the clearly established 'arbitrary and disproportionate' standard to the facts of his case."  <u>Brown</u>, 630 F.3d at 72.

---

[4] The Petition does briefly assert that "[t]he lack of an interpreter implicates fundamental due process rights" and that, "[a]s a matter of fundamental fairness, [Lee] was entitled to a translator he could comprehend."  [Dkt. 1 at 31-32].  While these statements sound in Constitutional law, there is no Supreme Court precedent on this issue, so relief under 28 U.S.C. § 2254(d)(1) is foreclosed.

Lee asserts that the following three findings of fact were unreasonable in light of the evidence presented: (1) that Moy was a competent Taishanese translator, (2) that Liu was a competent translator, and (3) that the Trial Court appropriately addressed Lee's objections as to the translators.  Respondent avers that Lee has not demonstrated that the SJC's findings of fact were objectively unreasonable, and thus they require deference.

a)      <u>**Interpreter Moy**</u>

Lee contends that "[t]he trial judge did not make detailed findings regarding Moy's competence" instead relying on "a perfunctory colloquy with Moy" to find him competent.  [Dkt. 13 at 22].  Lee claims that Moy was not qualified to translate Taishanese because he learned the language from his cousin, he claimed to have been interpreting Taishanese since 1985 but admitted he had not done so between 1985 and 2001, and he failed to verify the extent of his work as a Taishanese interpreter with the Interpreter's Office at the Supreme Court Criminal Term in New York County.  [<u>Id.</u>].  Furthermore, Lee asserts that the Trial Court repeatedly disregarded Lee's objections to Moy as a translator and evidence that Moy's translations were not adequate.  [<u>Id.</u> at 23].  As examples, Lee highlights several exchanges during trial where Lee was asked questions, and his answers were confused and nonresponsive.  [<u>Id.</u> at 23-24].

As an initial matter, in addition to the deference demanded by AEDPA, judgments concerning interpreters are "uniquely within the province of the trial judge."  <u>Commonwealth v. Garcia</u>, 379 Mass. 422, 437 (1980).  <u>See</u> <u>Valladares v. United States</u>, 871 F.2d 1564, 1566 (11th Cir. 1989) (finding that a judge in direct contact with a defendant must be given wide discretion to decide adequacy of interpreter); <u>Chee v. United States</u>, 449 F.2d 747, 748 (9th Cir. 1971) (per curiam) ("the trial court has broad discretion in determining fitness and qualifications of interpreters").

Here, deference to the trial judge's decisions to discredit Lee's objections is particularly warranted as those decisions were "determinations of credibility and demeanor [which] lie peculiarly within a trial judge's province." Davis v. Ayala, 576 U.S. 257, 274 (2015); see also United States v. Carrion, 488 F.2d 12, 14 (1st Cir. 1973). [S.A. Ex. 22 at 8-10; Ex. 25 at 13-18; Ex. 28 at 47; Ex. 36 at 10; Ex. 44 at 8, 27-28, 30]. In his findings of fact, the trial judge reviewed the record in its entirety and concluded that Lee had not established that he could not understand his interpreters. [S.A. Ex. 44 at 5]. The SJC reviewed these findings, noting that, with Moy translating, Lee was able to answer 625 questions posed by his counsel on direct examination and 300 questions on cross-examination. Lee, 483 Mass. at 543.

Lee's suspicions regarding Moy's credentials and the isolated exchanges when Lee's answers were nonresponsive could give rise to the inference that Lee did not comprehend all of what was being translated. They may even raise a colorable claim such that "fairminded jurists could disagree on the correctness of the state court's decision." Hensley v. Roden, 755 F.3d 724, 730-31 (1st Cir. 2014). However, suspicions and inferences do not meet the high bar warranting federal habeas relief. Applying the strict standards mandated under AEDPA, Lee has not established that the SJC's factual determinations were objectively unreasonable, nor has he refuted the SJC's factual determinations by clear and convincing evidence. 28 U.S.C. § 2254(d)-(e)(1). Therefore, the factual findings of the trial and appellate state courts will not be disturbed.

### b)   **Interpreter Liu**

Lee asserts that the SJC failed to grapple with the evidence that Lee could not understand Liu's translations into Cantonese. He submits that the SJC's findings regarding Liu's competence as a Cantonese translator were "not responsive" to his objections, which were that he, a Taishanese speaker, could not understand Liu's Cantonese. [Dkt. 13 at 6]. As evidence of

the comprehension gap, Lee refers to his objections to Liu on April 5, April 6, and April 12.  [Id. at 27; S.A. Ex. 21 at 5-7; Ex. 22 at 3-5; Ex. 25 at 6-7].  Lee also repeats his concern, voiced on April 6, that Liu was mistranslating or misinterpreting his words.

Lee's claim ignores the SJC's earlier finding.  Crucially, before determining that Liu was a competent, Cantonese translator, the SJC endorsed the trial judge's finding that Lee spoke fluent Cantonese.  As evidence of Lee's fluency, the SJC cited to: (1) Lee's repeated representations over four years that "his native language is Cantonese,"; (2) the fact that during a colloquy on the fifth day of trial he withdrew his objections to the Cantonese interpreters; and (3) the fact that, at one point, he specifically requested the Cantonese interpreter, Lo.  Lee, 483 Mass. at 542.

Beyond asserting that he is a native Taishanese speaker, Lee provides no evidence, let alone clear and convincing evidence, to controvert the SJC's finding that he speaks fluent Cantonese.  Having failed to carry his burden of showing that the SJC unreasonably determined the facts in that regard, Lee's argument that the SJC unreasonably determined that he could understand Liu's Cantonese must also fail.[5]

### c)      The Trial Judge

Lee contends that the SJC ignored the trial judge's alleged mishandling of Lee's objections to the interpreters.  As the lone example, Lee points to the following SJC characterization of his objections:

> On the fifth day of trial, the judge conducted a colloquy of the defendant, where the defendant withdrew his objections to the Cantonese interpreters. In addition, while seeking a Taishanese interpreter for himself, the defendant also requested that the court assign Cantonese interpreter Lo.

Id.

---

[5] Lee's concern that Liu was mistranslating or misinterpreting his words in any meaningful way is pure conjecture. Lee has not identified any instances in the record where Liu's translations substantially deviated from Lee's words.

Lee disputes that he ever objected to or withdrew objections to the Cantonese interpreters.  The record shows that during the colloquy on March 16, Lee testified to understanding most of the empanelment that had just taken place.  [S.A. Ex. 16 at 9-13].  The court then confirmed with Lee that he "understood the impanelment process, understood the translation and [was] comfortable that [he] underst[ood] what [was] going on" to which Lee responded, "Yes."  [Id. at 14-15].  With respect to that colloquy, Lee is correct that he did not object to the Cantonese translators.

However, on March 14, Lee expressed to the court his dissatisfaction with Cantonese translator Li, stating that she had been overheard by the Cantonese translator Lo mistranslating certain words or phrases.  [S.A. Ex. 15 at 22-23].  Additionally, Lee informed the court that his native language was in fact Taishanese.  [Id. at 23-24].  In response, at least one of the interpreters believed a Taishanese translator would be more suitable.  [Id.].

Considering that Lee objected to a Cantonese translator on March 14 and then attested to understanding the proceedings fully on March 16, the SJC's summary of his posture was not an unreasonable determination of the facts.

Lee also contends that the SJC did not grapple with the trial judge's decision to dismiss Cantonese translator Lo over Lee's objection.  Lee has offered no evidence to show that the SJC unreasonably overlooked facts that would have invalidated this decision.  Nor can he.  Lee vigorously advocated for a Taishanese interpreter from March 14 to April 12.  [S.A. Ex. 15 at 23-24; Ex. 21 at 5-15; Ex. 22 at 9-10; Ex. 25 at 7, 136].  When the court was finally able to identify an eligible Taishanese interpreter, Moy, Lee objected to him on statutory grounds.  [S.A. Ex. 26 at 15-19].  He suggested that Cantonese interpreter Lo remain to fill in for Moy should Moy require a break.  [Id. at 22].

Finding that Moy was highly qualified, the trial judge swore Moy in as translator.  [Id. at 19-20].  The trial judge then dismissed Lo, pointing out that Lee had objected to previous translators on the basis that he was not a native Cantonese speaker, therefore his suggestion to retain Cantonese translator Lo was not persuasive.  [Id. at 23-24].   Based on these facts, the SJC reasonably left undisturbed the trial judge's decisions regarding Lee's translators.

**B.      Claim Two: Ineffective Assistance of Counsel**

Lee asserts that he received ineffective assistance of counsel in violation of the Sixth Amendment on the grounds that his counsel's failure to engage a competent translator to translate their meetings and communications in the four years leading up to trial and during trial rendered his performance objectively unreasonable and resulted in prejudice to the defense.  The Respondent contends that Lee's claim is procedurally defaulted, and even if it weren't defaulted, the claim fails on the merits.

**1.      The Relevant Standards**

A petitioner establishes ineffective assistance of counsel if they show (1) "that counsel's performance was deficient;" and (2) "that the deficient performance prejudiced the defense." Strickland v. Washington, 466 U.S. 668, 687 (1984). Deficient performance constitutes performance that falls "below an objective standard of reasonableness under the circumstances." Yeboah-Sefah v. Ficco, 556 F.3d 53, 70 (1st Cir. 2009) (quoting Sleeper v. Spencer, 510 F.3d 32, 38 (1st Cir. 2007) (internal quotation marks omitted).  To demonstrate prejudice, a petitioner must show "that, but for counsel's unprofessional error, there is a reasonable probability that the result of the proceeding would have been different."  Id. (quoting Sleeper, 510 F.3d at 39) (internal quotation marks omitted).  "Judicial scrutiny of counsel's performance must be highly

deferential," and the petitioner must overcome "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  Strickland, 466 U.S. at 689.

For purposes of habeas review, "[t]he Strickland standard qualifies as clearly established federal law."  Janosky v. St. Amand, 594 F.3d 39, 47 (1st Cir. 2010) (internal citations omitted).  Where a state court adjudicated a petitioner's Strickland claims on the merits, the petitioner must not only satisfy the deferential Strickland standard, but also the deferential § 2254 standard.  Yeboah-Sefah, 556 F.3d at 70.  As "[t]he standards created by Strickland and § 2254(d) are both highly deferential, . . . and when the two apply in tandem, review is doubly so."  Harrington, 562 U.S. at 105 (internal citations and quotation marks omitted).  A federal habeas court therefore considers "whether the state court applied Strickland to the facts of petitioner's case in an objectively unreasonable manner."  Yeboah-Sefah, 556 F.3d at 71 (citing Malone v. Clarke, 536 F.3d 54, 63 (1st Cir. 2008)).

Furthermore, pursuant to the procedural default doctrine, a federal habeas court has no authority to review a question of federal law decided by a state court if the decision of that court rests upon an independent and adequate state procedural ground.  Coleman v. Thompson, 501 U.S. 722, 729–30 (1991).  "Procedural default of federal claims in state court is an independent and adequate state-law ground barring habeas relief, so long as the state regularly follows the rule and has not waived it by relying on some other ground."  Jewett v. Brady, 634 F.3d 67, 76 (1st Cir. 2011) (internal citations omitted).

### 2. The SJC's Findings

The SJC's findings as to Lee's ineffective assistance of counsel claim as it pertains to translators are confined to the following footnote:

> The defendant also argues, for the first time on appeal, that he was deprived of effective assistance because trial counsel visited him in jail eighteen times (over a four-year period of pretrial detention), and that an interpreter was present for only eight visits.  Our case law strongly disfavors raising an ineffective assistance claim on direct appellate review because the record is "bereft of any explanation by trial counsel for his actions" (citation omitted).  Commonwealth v. Gorham, 472 Mass. 112, 116 n.4, 32 N.E.3d 1267 (2015).  To be entitled to relief, "the factual basis of the claim [must] appear[] indisputably on the trial record."  Commonwealth v. Zinser, 446 Mass. 807, 811, 847 N.E.2d 1095 (2006).  The defendant does not contend that counsel was unprepared in any manner.  Nor does he explain how he was prejudiced by the lack of an interpreter.  Moreover, the defendant does not mention that the record demonstrates that trial counsel visited the defendant, with an interpreter, an additional forty-two times in the court house holding cell.

Lee, 483 Mass. at 544 n.11.

### 3.      Collateral Review

Respondent suggests that the SJC's footnote represents a rejection of Lee's claim based on adequate and independent state-law grounds, namely waiver, which effectuates a procedural default.  That argument is not persuasive.  Even Respondent characterizes the SJC's analysis of the claim as "noting the lack of preservation" and making "reference to the lack of preservation." [Dkt. 36 pp. 18, 19 (emphasis added)].  Respondent cites Harris v. Reed as standing for the proposition that a state court may reach the merits of a defaulted claim in an alternative holding. [Id. p. 19 (citing Harris v. Reed, 489 U.S. 255, 264 n.10 (1989)].  However, the cited footnote specifically provides that a state court may engage with the merits "as long as the state court explicitly invokes a state procedural bar rule as a separate basis for decision."  Harris, 489 U.S. at 264 n.10.

Here, the SJC acknowledged that raising an ineffective assistance of counsel claim on direct appellate review is disfavored but went on to define the route to relief, i.e. "the factual basis of the claim [must] appear[] indisputably on the trial record").  Lee, 483 Mass. at 544 n. 11 (citing Zinser, 446 Mass. 807, 811).  The SJC then found that there was no evidence in the record

to support the conclusion that counsel was unprepared or that Lee was prejudiced by the perceived lack of a competent translator.  Id.  Nowhere did the SJC "explicitly invoke[] a state procedural bar rule as a separate basis for decision."  Harris, 489 U.S. at 264 n.10.  Instead, the SJC clearly and solely rejected Lee's ineffective of counsel claim on the merits.[6]  The claim is therefore not defaulted.

However, Lee's claim cannot survive either prong of Strickland.

First, Lee makes no showing of deficiency other than stating that his counsel visited him at the Middleton House of Correction eighteen times in the four years prior to trial and brought an interpreter to only eight of those visits.  [Dkt. 13 at 15; Dkt. 1, Ex. K].  Lee does not explain how this fact rendered counsel so objectively inadequate as to fall outside the presumption of reasonableness, nor does he contend with the 42 additional visits counsel made to Lee in lockup during trial when counsel did bring an interpreter.  [Dkt. 1, Ex. K].

Second, Lee proffers no evidence of prejudice.  Lee suggests that the language barrier "meant that Mr. Lee could not properly discuss his trial, or the possible defenses he might raise" and queries "why [counsel] did not make earlier efforts to secure [a translator]."  [Dkt. 13 at 16, 17].  Lee concludes that "[t]he record shows that Mr. Lee may have been deprived of [the right to an interpreter] through his counsel's conduct, yet the Supreme Judicial Court makes no effort to discuss or explain why counsel's conduct was somehow within the acceptable range of conduct for any attorney."  [Id. at 17 (emphasis added)].  But hypotheticals and questions without tethers

---

[6] Although the SJC did not state the standard by which it assessed the merits of Lee's claim, it analyzed Lee's other claim of ineffective assistance that was not raised on habeas review under the "substantial likelihood of a miscarriage of justice" standard set forth in Mass. Gen. L. ch. 278, § 33E.  The First Circuit has concluded that the Section 33E standard "is 'at least as protective of the defendant's rights as its federal counterpart.'"  Lucien v. Spencer, 871 F.3d 117, 129 (1st Cir. 2017) (quoting Kirwan v. Spencer, 631 F.3d 582, 590 n.3 (1st Cir. 2011)).  Because the SJC applied a standard that was more favorable to Lee than the federal Strickland standard, the SJC did not "announce[] a rule of law that directly contradicts existing Supreme Court precedent."  Cronin v. Comm'r of Prob., 783 F.3d 47, 50 (1st Cir. 2015).

to the record cannot survive the doubly deferential standard of <u>Strickland</u> and AEDPA.  Without some evidence that, due to the language barrier, Lee was unable to communicate critical information about his defense to his counsel or vice versa, Lee cannot establish that counsel was ineffective.

IV.     **CONCLUSION**

For the foregoing reasons, Petitioner's Amended Petition for a Writ of Habeas Corpus, [Dkt. 13], is **<u>DENIED</u>**.

**SO ORDERED.**

Dated: September 25, 2024                               */s/ Angel Kelley*
                                                         Hon. Angel Kelley
                                                         United States District Judge